## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

3M INNOVATIVE PROPERTIES COMPANY,
THE 3M COMPANY

           Plaintiffs,

   v.

ASSURETEC SYSTEMS, INC.,

           Defendant.

Civil No. _____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## NATURE OF THIS ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, 281-285.

## THE PARTIES

2. Plaintiff 3M Innovative Properties Company ("3M IPC") is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business at 3M Center, St. Paul, Minnesota 55133-3427.

3. Plaintiff 3M Company ("3M Co.") is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business at 3M Center, St. Paul, MN 55133-3427.

4. Defendant AssureTec Systems, Inc. ("AssureTec"), upon information and belief, is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business at 200 Perimeter Road, Manchester, NH 03103-

3326.  AssureTec's registered agent for service of process is United Corporate Services, Inc., 874 Walker Road, Suite C, Dover, DE 19904.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.  This Court has personal jurisdiction over AssureTec because AssureTec is a Delaware corporation.

7.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

## FIRST CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,019,287

8.  On February 1, 2000, United States Patent No. 6,019,287 ("the '287 patent"), entitled "Security Reader For Automatic Detection Of Tampering And Alteration," was duly and legally issued by the United States Patent and Trademark Office.

9.  3M IPC owns the entire right, title and interest of the '287 patent.  3M Co. is duly licensed under the '287 patent.  A true and correct copy of the '287 patent is attached as Exhibit A to this Complaint.

10. Upon information and belief, Defendant AssureTec has been and is directly infringing, actively inducing others to infringe, and/or contributing to the infringement of the '287 patent in the United States, including through selling and/or offering to sell its AssureID™ Professional Platform and i-Dentify Reader/Authenticator product.

11. Upon information and belief, AssureTec will continue to infringe the '287 patent unless and until it is enjoined by this Court.

12. Upon information and belief, AssureTec has infringed and continues to infringe the '287 patent with full knowledge of the '287 patent and its infringement is willful.

13. AssureTec has caused and will continue to cause 3M IPC and 3M Co. (collectively "3M") irreparable injury and damage by infringing the '287 patent. 3M will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until AssureTec is enjoined from infringing the '287 patent.

## SECOND CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,611,612

14. On August 26, 2003, United States Patent No. 6,611,612 ("the '612 patent"), entitled "Security Reader For Automatic Detection Of Tampering And Alteration," was duly and legally issued by the United States Patent and Trademark Office.

15. 3M IPC owns the entire right, title and interest of the '612 patent. 3M Co. is duly licensed under the '612 patent. A true and correct copy of the '612 patent is attached as Exhibit B to this Complaint.

16. Upon information and belief, Defendant AssureTec has been and is directly infringing, actively inducing others to infringe, and/or contributing to the infringement of the '612 patent in the United States, including through selling and/or offering to sell its AssureID™ Professional Platform and i-Dentify Reader/Authenticator product.

17. Upon information and belief, AssureTec will continue to infringe the '612 patent unless and until it is enjoined by this Court.

18. Upon information and belief, AssureTec has infringed and continues to infringe the '612 patent with full knowledge of the '612 patent and its infringement is willful.

19. AssureTec has caused and will continue to cause 3M irreparable injury and damage by infringing the '612 patent. 3M will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until AssureTec is enjoined from infringing the '612 patent.

## JURY TRIAL DEMAND

20. Pursuant to Fed. R. Civ. P. 38, 3M hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, 3M respectfully requests this Court enter judgment:

(1) that AssureTec has infringed the '287 patent and the '612 patent;

(2) permanently enjoining AssureTec and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the '287 patent and the '612 patent;

(3) awarding 3M its damages in amounts sufficient to compensate it for AssureTec's infringement of the '287 patent and the '612 patent, together with prejudgment and post judgment interest and costs, pursuant to 35 U.S.C. § 284;

(4) trebling the damages awarded to 3M by reason of AssureTec's willful infringement of the '287 patent and the '612 patent;

(5) declaring this case to be "exceptional" under 35 U.S.C. § 285 and awarding 3M its attorneys' fees, expenses and costs incurred in this action; and

(6) awarding 3M such other and further relief as this Court deems just and proper.

FISH & RICHARDSON P.C.

**Of Counsel**
Hildy Bowbeer
Melissa E. Buss
3M Innovative Properties Company
3M Center
P.O. Box 33427
Saint Paul, MN 55133

By: _Thomas L. Halkowski_
Thomas L. Halkowski (#4099)
William J. Marsden, Jr. (#2247)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Jonathan E. Singer
Ann N. Cathcart Chaplin
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Attorneys for Plaintiffs
3M INNOVATIVE PROPERTIES
COMPANY, THE 3M COMPANY

Dated: June 6, 2006

60328164.doc

# Exhibit A

US006019287A

# United States Patent [19]

## Mann

[11] **Patent Number:** **6,019,287**

[45] **Date of Patent:** **Feb. 1, 2000**

[54] **SECURITY READER FOR AUTOMATIC DETECTION OF TAMPERING AND ALTERATION**

[75] Inventor: **Graeme R. Mann**, Engadine, Australia

[73] Assignee: **3M Innovative Properties Company**, St. Paul, Minn.

[21] Appl. No.: **08/624,584**

[22] PCT Filed: **Oct. 6, 1994**

[86] PCT No.: **PCT/US94/11359**

§ 371 Date: **Aug. 15, 1996**

§ 102(e) Date: **Aug. 15, 1996**

[87] PCT Pub. No.: **WO95/10097**

PCT Pub. Date: **Apr. 13, 1995**

[30] **Foreign Application Priority Data**

Oct. 6, 1993  [AU]  Australia ................................. PM1661

[51] Int. Cl.[7] ........................................ **G06K 7/10**

[52] U.S. Cl. ............................... **235/454;** 235/488

[58] Field of Search ....................... 235/454, 488

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,222,662 | 9/1980 | Kruegle | 355/40 |
| 4,684,795 | 8/1987 | Colgate, Jr. | 235/488 |

4,765,656  8/1988  Becker et al. ........................... 235/488

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0 219 012 | 10/1986 | European Pat. Off. . |
| 2594982 | 2/1986 | France . |
| 2 212 445 | 7/1989 | United Kingdom . |

*Primary Examiner*—Harold I. Pitts
*Attorney, Agent, or Firm*—Peter L. Olson

[57] **ABSTRACT**

A document (**10**) is covered by a laminate (**13**) comprising a layer of microspheres (**16**) over an adhesive layer (**14**) covering a source image (**12**) such as a photograph, printed matter, or a bar code arranged on a substrate (**11**). Light impinging on the document (**10**) is split by the optical properties of the microspheres (**16**) and underlying specular reflectors. The remaining light passes through the microspheres (**16**), through the adhesive layer (**14**) and strikes the substrate (**11**) or source image (**12**) on the document (**10**), and is reflected (**18**) and scattered (**20**). Alternatively, the laminate (**13**) can comprise a plain or clear layer of polyester without microspheres over the adhesive layer (**14**). Light impinging on the laminate (**13**) passes through the polyester and laminate (**14**) to strike the substrate (**11**) or source image (**12**) where it is reflected and scattered. A first light source (**24**) directs light to the document (**10**). A second light source (**26**,**27**) directs light towards a beam splitting mirror (**23**) which reflects the light to the document (**10**).

**23 Claims, 2 Drawing Sheets**





*Fig. 1*



*Fig. 2*



*Fig. 3*

*Fig. 4*

6,019,287

**1**

# SECURITY READER FOR AUTOMATIC DETECTION OF TAMPERING AND ALTERATION

## TECHNICAL FIELD

The present invention relates generally to a system for recovering visual data from a document that has been covered by a security laminate, and then examining the integrity of the document to ensure that no tampering or alteration has occurred to either the document or the visual data contained thereon.

## BACKGROUND

There is a wide variety of different types of documentation that contain information of a very important nature that, by itself, assigns legal title to, or possession of, such a document, or of an article to which that document relates. Examples of such documents are, but not limited to, passports, identity (I.D.) cards, land titles, share titles, etc. Ownership of such items is generally declared by a typed, printed, photographic, or handwritten inclusion on that item, detailing for example the owners name, address, signature, and so on.

Using commonly available technology it is possible to alter such typed, printed, photographed or handwritten details in such a way that the document can then show that ownership of that document, or an article to which that document relates, has been transferred to a party not legally entitled to that document or article.

The major concern here is that, although the document itself is a legal instrument in that it has not been forged, duplicated or simulated, and therefore this document will pass an appropriate security check, the details contained thereon have been altered and therefore give a false assignment of that legal document.

To impede the successful tampering or alteration of such details it is a known practice to apply a security laminate over the top of such details. Such laminates invariably contain security break indicators that will clearly reveal as to whether that laminate itself is genuine, whether that laminate has been lifted and replaced, whether that laminate's surface has been penetrated, and whether that laminate surface has been overprinted or overlabelled.

It is a further practice to add areas of printing or patterns which only respond to ultra-violet or infra-red excitation.

To examine a document thus protected with such a laminate or ultra-violet or infra-red markings, a special viewer is employed whereby an examiner or security official can observe the document by means of placing such document in that special viewer and applying differing light sources to reveal both the protected details and the integrity of the protective security laminate. The examination is carried out by an examiner or security official by physically signing the document in question and by making a valued judgment as to its contents and integrity.

There is a growing need to automate this process.

## SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide an arrangement that substantially ameliorates the problems alluded to above.

Desirably, a device which can be controlled from computerized control equipment, which views through laminate and transfers an image of the protected details to the

**2**

computerized control equipment for further processing, such as decoding, and then views the structure of the laminate itself and transfer its details to the computerized control equipment for further processing, such as examining this structure for irregularities, is provided.

Also provided is a hardware device which scans the images in both a "look through" and a "look at" mode and transfers corresponding images to an associated processing unit.

Apparatus configured in accordance with the present invention is able to view through the securing laminate to reveal details of the information contained thereunder, and then view the structure of the laminate in such a way as to show the areas on the security laminate which no longer conform to the original manufacturing specification, thus indicating possible forgery, tampering or alteration, and preferably to reveal the presence of other indicators such as may become visible through ultra-violet or infra-red excitation.

In accordance with one aspect of the present invention there is disclosed an arrangement for reading information from a first light transmissive layer and a second layer of an object, said arrangement comprising, in combination:

first light source means for directing (first) light at a first angle of incidence at the object;

second light source means for directing (second) light at a second angle of incidence, different to said first angle of incidence, at the object;

a light receiving device for receiving a reflection of said first light from said first layer, and a reflection of said second light from said second layer and to produce at least one image signal; and

a processing device for processing said image signal to provide information regarding said layers.

Preferably, the first layer comprises a plurality of glass spheres or spheres of material having similar optical properties to glass, referred to herein as microspheres. Alternatively, the first layer comprises a clear material having similar optical properties to polyester.

Preferably, the first light means comprises one or more sources that are directed to said object by first being refracted from a two-way mirror, the light having been reflected by the first layer then returning again through the two-way mirror to the light receiving device. The first light illuminates preferably at multiple different intensities as controlled by the processing device.

Preferably, the processing device is a data processing unit such as a personal computer.

Preferably, the first and second light means are switchable so as to operate alternately or in unison, and of variable intensity. The first and second light means can be of different optical bandwidths. The light source means can also be within the visible spectrum, and/or in the ultra-violet band and/or in the infra-red band. The light produced can be polarized or unpolarized.

Preferably, the light receiving means is a video image receiver such as, for example, a charge coupled device.

Preferably, the first layer is a sheet of plastics material having said spheres of glass or the like applied thereto. Alternatively the first layer can be a sheet of clear or plain polyester or similarly functioning material.

Preferably, said second layer is a document located below the first layer such as for example the page of a passport.

Preferably, the angle of reflection of one light source relative to the position of the video image receiver is less than 1°. Alternatively, the angle of reflection of one light

6,019,287

**3**

source relative to the position of the video image receiver is greater than 1°.

There is a second mode of use whereby a sighting is made directly down a beam of light whereupon the details are no longer seen but are replaced by an image of the physical structure of the laminate surface. Alternatively, in this second mode of operation the details are no longer seen but are replaced by the distorted image of the light source being "mirrored" by the surface of the polyester laminate.

In accordance with another aspect of the invention there is provided a frame into which the document or passport is positioned.

In accordance with another aspect of the invention there is provided a multiplicity of light sources wherein some light sources strike the surface of the document and reflect back to the viewing position at an angle greater than 1°.

In accordance with another aspect of the invention there are provided other light sources that strike the document and reflect back to the viewing position at an angle less than 1°.

In accordance with another aspect of the present invention there is provided means by which these light sources are operated from an attached controlling device such as, but not limited to, a personal computer.

The video imaging device or similar sensory array may be located at the view position and directed towards the surface of the document. Images detected by this device are provided with a means whereby said images can be passed onto an attached controlling device such as, but not limited to, a personal computer.

BRIEF DESCRIPTION OF THE DRAWINGS

A preferred embodiment of the present invention will now be described, by way of example, with reference to the accompanying drawings, in which:

FIG. 1 is a schematic cross-section of a typical document over which has been fixed a retroreflective security laminate;

FIG. 2 schematically illustrates the optical properties of the security laminate of FIG. 1;

FIG. 3 schematically illustrates an optics arrangement of the preferred embodiment; and

FIG. 4 illustrates the light paths of the arrangement of FIG. 3.

These figures, which are idealized, are not to scale and are intended to be merely illustrative and non-limiting.

DETAILED DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates a cross-section of the "secured" document 10 having a document substrate 11, with added typing, printing, bar code, photo, or handwriting collectively known herein as a source image 12. The source image 12 is shown in exaggerated size, for the purpose of clarity, and is covered by a composite layer of a security laminate 13. The laminate 13 comprises a retroreflective layer 15 that is made up of a monolayer of microspheres 16, typically formed by glass, an underlying partially-light-transmissive reflective layer 43, typically binder layer 9, and an adhesive layer 14. An example of a suitable laminate 13 is disclosed in Australian Patent No. 462,214 (Sevelin) which corresponds to U.S. Pat. No. 3,801,183. Minnesota Mining and Manufacturing Company's CONFIRM Brand Security Laminates are examples of commercially available laminates suitable for use in the preferred embodiment.

FIG. 2 illustrates the optical characteristics of the monolayer 15 of microspheres 16. A light source 17 emits a beam of light 21 that travels towards or is incident upon the

**4**

laminate 13. In this illustration, the beam of light 21 enters one of the microspheres 16 and is split, with one portion 18 being retroreflected back toward the light source 17 and one portion 19 being transmitted so as to reach the substrate 11 or source image 12, as illustrated. The splitting of light beam 21 is a result of the optical properties of microspheres 16 and underlying reflective layer 43 which includes specular reflectors which are sometimes referred to as being "partially-light-transmissive".

The transmitted light portion 19, passes through the microsphere 16, through the reflective layer 43 and the adhesive layer 14 and strikes the substrate 11, which is opaque, or the source image 12 of the document 10. From there, the light beam is reflected and scattered to produce a number of beams 20.

In can be noted from FIG. 2 that the portion of the light beam 21 that is returned to the source 18 along the light path 18 can be said to be returning from the microsphere 16, at an angle less than 1° and thereby substantially parallel, if the position of the source 17 is also considered to be a viewing position.

It is further noted that whilst FIG. 2 illustrates the optics of a single microsphere 16, all microspheres within the laminate 15 give a corresponding response.

However, if a position 22 is considered to be the viewing position relative to the light source 17, then it can be said that the beams 20 are reflecting at an angle greater than 1° from the surface of the document 10, even though these beams 20, in fact, penetrate the retroreflective layer 15, and reflect from the substrate 11 and source image 12.

Not illustrated in FIGS. 1 or 2, the laminate can alternatively comprise a polyester laminate, known to be used for document security and which comprises a polyester layer, and an adhesive layer corresponding to the adhesive layer 14. The polyester layer has the property that, whilst being transparent to ordinary diffuse light, it is also substantially specularly reflective of light incident at angles substantially normal to the film.

FIG. 3 illustrates an arrangement of one preferred embodiment of a system that comprises two light sources and one viewing position. An alternative configuration of a single light source and two viewing positions can be used. However the "optical" characteristics of both systems are identical.

A view frame 22 is provided that accurately locates the document 10 to be viewed.

A second light source 24 is provided which is arranged to be at an angle relative to a viewing position 25, of greater than 1° . The light source 24 is controlled by power source 28 and trigger source 29 which in turn is controlled by an attached personal computer 41 or equivalent computerized controller. In other embodiments, multiple ones of the first light source 24 can be used.

A first light source 26 is focused by a lens 27 onto a beam splitting (two way) mirror 23. The turning properties of mirror 23 produce a light source which appears to a viewing position 25 as being returned from the surface of the document 10 at an angle of less than 1°.

Arranged at the viewing position 25 is a video image receiver 40 such as, for example, a charge coupled device (CCD).

The light source 26 is controlled by power source 30 and trigger source 31 which in turn is controlled by the personal computer 41 controller. In other embodiments multiple ones of light source 26 can be used.

6,019,287

**5**

Each of the power sources **28,30** are configured so as to adjust the intensity of the respective light source **24,26** through a multiplicity of intensities from a minimum value, such as "just on", to a maximum value, such as "full-on".

A line **32** is the signal path for images recovered by the video image receiver **40** being returned to the personal computer **41** for image processing.

FIG. 4 illustrates the light paths within the preferred embodiment of FIG. 3. The object document **10** is being examined for both content and security integrity.

The light source **24**, relative to the viewing position of the video image receiver **40**, is at an angle greater than 1° when emitted light path **33** is measured against a return beam **34**. When the light source **24** is illuminated, the beam **33** penetrates the microsphere structure of the document **10** and reflects from the substrate **11** and source image **12** beneath.

The video image receiver **40** can therefore "look through" the laminate **13**.

When the light source **26** is illuminated, a beam of light **35**, is redirected as a beam **36**, towards the document **10**, due to the properties of beam splitting mirror **23**.

The beam **36** is then reflected as a beam **37** by the surface of the microsphere structure of the document **10** being at an angle of less than 1° . In this case the light source **26** does not appear to penetrate the microsphere structure but instead can be said to "look at" the microsphere structure of the laminate.

The characteristics of document **10** can be detected by the video image receiver **40** and passed on for analysis by the personal computer **41** dependent on which of the light sources **24** or **26** is illuminated. In a mode where the source image **12** contained on the document **10** needs to be passed to the computer **41**, the computer controlled light source **24** is illuminated.

In a mode where the minute details of the structure of the microspheres of the laminate **13** need to be passed on to the computer **41**, then computer controlled light source **24** is extinguished and light source **26** is illuminated.

As an alternative to alternately switching light sources **24** and **26**, the beams of light **33** and **35** can be filtered to include light only of a limited or predetermined wavelength or polarity. In such a situation, both light sources **24** and **26** can be enabled simultaneously and appropriate computer software is used to process and resolve a dual image created thereby.

Images processed and produced by the computer **41** can be displayed for examination on a video display unit **42** associated therewith.

Through external processing it is possible to identify that a retroreflective laminate exists, or that a plain polyester laminate exists, or that neither exist.

It is a pre-condition of the following explanation that in the previous step of recovering visual data from the document and decoding that data into computer compatible codes, it is revealed as to which type of laminate is supposed to be protecting said document. This is achieved through a "reference" or "look-up" table in such an external device as assigning "this style of laminate to this series of protected document", e.g., Australian passports contain a retroreflective laminate, British passports contain a polyester laminate, etc. These pre-conditions and external controls can be programmed into the personal computer **41**.

If external control determines that a retroreflective laminate should be present, light sources **24** and **26** are illuminated at minimum intensity. If a retroreflective laminate is

**6**

present a visual response will be detected over the entire viewing area of the video image receiver **40**.

If no laminate is present there will be insufficient light intensity to illuminate the source image **12** and the video image receiver will see no visual response.

If a polyester film or similar laminate is present the mirrored image will be in the form of a distorted flairing in the center of the video image area roughly equal to the image of the light source.

When external control determines that a retroreflective laminate exists, light sources **24** and **26** are excited to illuminate to mid brilliance where the microsphere structure reflects a much brighter signal which makes it possible to distinguish the background bead signal from any hidden source image contained in the microsphere structure. Control within the computer **41** then attempts to pattern match this hidden source image against a pattern that has been stored as part of the reference for the item being examined.

In order to examine for microsphere structure damage, the light sources **24** and **26** are illuminated to full brilliance where any damage is identifiable as a dark area against the intact microsphere structure. The computer **41** is configured to apply a brightness threshold across the video image in order to reveal the dark areas.

If external control determines that a polyester laminate should be present, the light source **26** is illuminated to a minimum brilliance. A distorted image of the light source will be seen by the video image receiver as a distorted bright flair in roughly the center of the image area. This pattern is stored. The light source **26** is then increased in intensity progressively. If the image of the flairing is seen to grow in area in the correct proportion to the original image then the light source is "looking at itself in the mirror" and confirmation is given that polyester laminate exists.

To examine for surface cuts, a further light source **50** is aimed at the surface of the document **10**, 89° away from the axis of the light source **26**. This is achieved by creating a beam of light **51** that is focused across the surface of the document **10**, in either the horizontal or vertical plane depending on the orientation of the document **10**. The focused light **51** is reflected from the document **10** back through the mirror **23** and is detected by the image receiver **40**. Cuts will show up as flairs in the surface of the laminate that were not detected under light source **24**.

If external control indicates that no laminate is or should be present, the light source **26** is illuminated to full brilliance and the image gathered is compared to the image seen by the light source **24**. If they are identical then there is no laminate present.

To check for the presence of ultra-violet or infra-red responses, as determined by the "reference" or "look-up" tables, under external control a corresponding light source is illuminated and the video image receiver **40** should detect a specific color response at a specific x/y coordinate, which is resolvable by the computer **41**.

The presence of patterned diffraction gratings, sometimes referred to as "kinegrams", and of holographic embossings, can also be revealed through the activation of the aforementioned light sources. In these cases the gratings reveal their position and shape as being a difference in the color responses as revealed by two differently angled light sources. Computer analysis can compare the responses to provide a determination of the presence or otherwise of holographs or embossings.

The foregoing describes only a number of embodiments of the present invention and modifications, obvious to those

6,019,287

7

skilled in the art, can be made thereto without departing from the scope of the present invention.

I claim:

**1**. An arrangement for reading information from a first light transmissive layer and a second layer of an object, said arrangement comprising:

a first light source for directing first light at a first angle of incidence at the object;

a second light source for directing second light at a second angle of incidence, different to said first angle of incidence, at the object;

a light receiver for receiving a reflection of said first light from said first layer, and a reflection of said second light from said second layer and to produce at least one image signal; and

a processor for processing said image signal to provide information regarding said layers.

**2**. An arrangement as claimed in claim **1**, wherein the first layer comprises a plurality of microspheres having optical properties similar to glass.

**3**. An arrangement as claimed in claim **1**, wherein the first layer comprises a material having optical properties similar to polyester.

**4**. An arrangement as claimed in claim **1**, further comprising a two-way mirror for directing the first light to said object, and arranged so that the first light having been reflected by the first layer passes through the two-way mirror for detection by the light receiver.

**5**. An arrangement as claimed in claim **1** wherein the processor is a data processing unit such as a personal computer.

**6**. An arrangement as claimed in claim **1** wherein the first and second light sources are switchable so as to operate alternately or simultaneously.

**7**. An arrangement as claimed in claim **1** wherein each of the first and second light sources are individually intensity controlled.

**8**. An arrangement as claimed in claim **1** wherein the first and second light sources produce light at different bandwidths, or different wavelengths, or both.

**9**. An arrangement as claimed in claim **8** wherein said light is selected from the group consisting of ultra-violet light and infra-red light.

**10**. An arrangement as claimed in claim **1** wherein the light receiver comprises a video image receiver, such as for example, a charged coupled device.

**11**. An arrangement as claimed in claim **2**, wherein the first layer is a sheet of plastic material having said microspheres applied thereto.

**12**. An arrangement as claimed in claim **1**, wherein said second layer is a document located below the first layer, said document comprising a source image.

**13**. An arrangement as claimed in claim **12**, wherein said document comprises a substrate upon which said source

8

image is formed, said substrate and said source image having different light reflective properties.

**14**. An arrangement as claimed in claim **12**, wherein said document is selected from the group consisting of a passport, an identity card, a land title, and a share title.

**15**. An arrangement as claimed in claim **1**, wherein an angle of reflection of said first light relative to the position of the light receiver is greater than 1°.

**16**. An arrangement as claimed in claim **1**, wherein an angle of reflection of said second light relative to the position of the light receiver is less than 1°.

**17**. An arrangement as claimed in claim **1**, wherein said processing device compares said image signal with at least one predetermined image to provide said information.

**18**. An arrangement as claimed in claim **1**, wherein said image signal represents a combination of said first light and said second light.

**19**. An arrangement as claimed in claim **1**, wherein said first light and said second light produce corresponding ones of said light from a predetermined one of said layer or said source image;

detecting said reflected light at at least one viewing location to provide a detected image; and

processing said image to resolve information regarding said source image or said layer or both.

**20**. An arrangement as claimed in claim **1**, further comprising a third light source for directing third light at a third angle of incidence, at least substantially normal to said first light, at said object, said third light being focused in a plane across a surface of said object.

**21**. An arrangement as claimed in claim **1**, wherein said image signal comprises a first image signal derived from illumination of said first light source, and a second image signal derived from said second light source, and said processing comprises comparing the first image signal with the second image signal to determine a color difference response, said response being indicative of a patterned diffraction grating or a holographic embossment formed in or on said object.

**22**. A method for examining an object having a source image and an overlying light transmissive layer, said method comprising the step of directing light at a plurality of different angles of incidence at said layer, said angles being selected to cause reflection of said image signal.

**23**. A method for examining an object having a source image and an overlying light transmissive layer, said method comprising the steps of:

(a) directing light at at least one angle of incidence at said layer to cause reflection of light from said layer; and

(b) detecting said reflected light at a plurality of viewing locations to provide plural resolve information regarding said source image or said layer or both.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,019,287                                              Page 1 of 1
DATED         : February 1, 2000
INVENTOR(S)   : Graeme R. Mann

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

<u>Column 4,</u>
Lines 55-59, this paragraph should be placed before the paragraph starting at column 4, line 48.

Signed and Sealed this

Sixteenth Day of October, 2001

Attest:

*Nicholas P. Godici*

NICHOLAS P. GODICI
Attesting Officer    *Acting Director of the United States Patent and Trademark Office*

# Exhibit B

(12) **United States Patent**          (10) Patent No.:     **US 6,611,612 B2**

Mann                                  (45) Date of Patent:     *Aug. 26, 2003

(54) **SECURITY READER FOR AUTOMATIC DETECTION OF TAMPERING AND ALTERATION**

(75) Inventor: **Graeme R. Mann**, Engadine (AU)

(73) Assignee: **3M Innovative Properties Company**, St. Paul, MN (US)

( * ) Notice:   This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/442,365**

(22) Filed:     **Nov. 17, 1999**

(65)           **Prior Publication Data**

US 2002/0034320 A1 Mar. 21, 2002

**Related U.S. Application Data**

(62) Division of application No. 08/624,584, filed on Aug. 15, 1996, now Pat. No. 6,019,287.

(51) Int. Cl.$^7$ ................................................. **G06K 9/00**

(52) U.S. Cl. ........................... **382/112**; 359/6; 382/140

(58) Field of Search ................................. 382/100, 112, 382/115–119, 135, 137, 138, 140, 154, 210, 211, 212, 213, 216, 218–219, 232, 294, 302, 305, 306, 312; 235/454–461, 70, 74, 462.01–462.19; 283/86–94; 359/1, 350, 6; 705/33, 35; 399/16; 194/207

(56)           **References Cited**

U.S. PATENT DOCUMENTS

3,801,183 A   4/1974   Sevelin et al. .............. 350/105

4,222,662 A   9/1980   Kruegle ...................... 355/40

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

EP   0 219 012    4/1987   .......... G06K/19/08
FR   2 594 982    8/1987   ............ G06K/7/10
GB   2 212 445    7/1989   .......... B42D/15/02

*Primary Examiner*—Jayanti K. Patel
(74) *Attorney, Agent, or Firm*—Carolyn V. Peters

(57)           **ABSTRACT**

A document (10) is covered by a laminate (13) comprising a layer of microspheres (16) over an adhesive layer (14) covering a source image (12) such as a photograph, printed matter, or a bar code arranged on a substrate (11). Light impinging on the document (10) is split by the optical properties of the microspheres (16) and underlying specular reflectors. The remaining light passes through the microspheres (16), through the adhesive layer (14) and strikes the substrate (11) or source image (12) on the document (10), and is reflected (18) and scattered (20). Alternatively, the laminate (13) can comprise a plain or clear layer of polyester without microspheres over the adhesive layer (14). Light impinging on the laminate (13) passes through the polyester and laminate (14) to strike the substrate (11) or source image (12) where it is reflected and scattered. A first light source (24) directs light to the document (10). A second light source (26, 27) directs light towards a beam splitting mirror (23) which reflects the light to the document (10). The light turning properties of the mirror (23) produce a light source which appears to an image receiver (40) as being returned from the surface of the document (10) at an angle of less than 1°. The image receiver (40) passes a signal via line (32) to a personal computer (41) which processes the received information. Such processing is to establish whether the document (10) includes a retroreflective laminate, a plain polyester laminate, or neither. Additionally, further processing can establish whether the document (10) has been tampered with, altered, or forged.

**33 Claims, 2 Drawing Sheets**



US 6,611,612 B2

Page 2

---

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,537,054 A | | 8/1985 | Properzi ...................... 72/224 |
| 4,598,205 A | * | 7/1986 | Kaule et al. ............. 250/458.1 |
| 4,634,872 A | | 1/1987 | Janus et al. ............. 250/458.1 |
| 4,650,283 A | * | 3/1987 | Orensteen et al. .......... 359/537 |
| 4,684,795 A | | 8/1987 | Colgate, Jr. ................ 235/457 |
| 4,765,656 A | | 8/1988 | Becker et al. ................ 283/70 |
| 4,811,408 A | * | 3/1989 | Goldman ................... 382/115 |
| 4,922,109 A | | 5/1990 | Bercovitz et al. .......... 250/556 |
| 4,945,215 A | * | 7/1990 | Fukushima et al. ........ 235/457 |
| 5,025,483 A | * | 6/1991 | Dinan et al. ............... 382/137 |
| 5,045,426 A | | 9/1991 | Maierson et al. .......... 430/126 |
| 5,132,808 A | * | 7/1992 | Higuchi et al. ............ 358/403 |
| 5,259,025 A | * | 11/1993 | Monroe et al. ............ 382/115 |
| 5,295,196 A | | 3/1994 | Raterman et al. .......... 382/135 |
| 5,310,222 A | * | 5/1994 | Chatwin et al. ............. 283/86 |
| 5,321,470 A | | 6/1994 | Hasuo et al. ............... 399/366 |
| 5,486,686 A | | 1/1996 | Zdybel, Jr. et al. ........ 235/375 |
| 5,514,860 A | * | 5/1996 | Berson ...................... 235/468 |
| 5,522,623 A | * | 6/1996 | Soules et al. ................ 283/91 |
| 5,640,553 A | | 6/1997 | Schultz ...................... 382/135 |
| 5,670,096 A | * | 9/1997 | Lu ............................. 264/1.1 |
| 5,719,948 A | | 2/1998 | Liang ........................ 382/112 |
| 5,742,807 A | | 4/1998 | Masinter ....................... 707/1 |
| 5,748,755 A | * | 5/1998 | Johnson et al. ............ 382/115 |
| 5,754,673 A | | 5/1998 | Brooks et al. .............. 382/112 |
| 5,771,315 A | | 6/1998 | Matsuyama ................ 382/191 |
| 5,787,186 A | * | 7/1998 | Schroeder .................. 382/115 |
| 5,835,616 A | * | 11/1998 | Lobo et al. ................. 382/115 |
| 6,269,169 B1 | | 7/2001 | Funk et al. ................. 382/100 |
| 6,326,741 B1 | * | 12/2001 | Hunt et al. ................. 315/316 |

* cited by examiner



*Fig. 1*



*Fig. 2*



US 6,611,612 B2

1

# SECURITY READER FOR AUTOMATIC DETECTION OF TAMPERING AND ALTERATION

## RELATED APPLICATION

This application is a division of U.S. application Ser. No. 08/624,584, filed Aug. 15, 1996, now U.S. Pat. No. 6,019, 287.

## TECHNICAL FIELD

The present invention relates generally to a system for recovering visual data from a document that has been covered by a security laminate, and then examining the integrity of the document to ensure that no tampering or alteration has occurred to either the document or the visual data contained thereon.

## BACKGROUND

There is a wide variety of different types of documentation that contain information of a very important nature that, by itself, assigns legal title to, or possession of, such a document, or of an article to which that document relates. Examples of such documents are, but not limited to, passports, identity (I.D.) cards, land titles, share titles, etc. Ownership of such items is generally declared by a typed, printed, photographic, or handwritten inclusion on that item, detailing for example the owners name, address, signature, and so on.

Using commonly available technology it is possible to alter such typed, printed, photographed or handwritten details in such a way that the document can then show that ownership of that document, or an article to which that document relates, has, been transferred to a party not legally entitled to that document or article.

The major concern here is that, although the document itself is a legal instrument in that it has not been forged, duplicated or simulated, and therefore this document will pass an appropriate security check, the details contained thereon have been altered and therefore give a false assignment of that legal document.

To impede the successful tampering or alteration of such details it is a known practice to apply a security laminate over the top of such details. Such laminates invariably contain security break indicators that will clearly reveal as to whether that laminate itself is genuine, whether that laminate has been lifted and replaced, whether that laminate's surface has been penetrated, and whether that laminate surface has been overprinted or overlabelled.

It is a further practice to add areas of printing or patterns which only respond to ultra-violet or infra-red excitation.

To examine a document thus protected with such a laminate or ultra-violet or infra-red markings, a special viewer is employed whereby an examiner or security official can observe the document by means of placing such document in that special viewer and applying differing light sources to reveal both the protected details and the integrity of the protective security laminate. The examination is carried out by an examiner or security official by physically signing the document in question and by making a valued judgment as to its contents and integrity.

There is a growing need to automate this process.

## SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide an arrangement that substantially ameliorates the problems alluded to above.

2

Desirably, a device which can be controlled from computerized control equipment, which views through laminate and transfers an image of the protected details to the computerized control equipment for further processing, such as decoding, and then views the structure of the laminate itself and transfers its details to the computerized control equipment for further processing, such as examining this structure for irregularities, is provided.

Also provided is a hardware device which scans the images in both a "look through" and a "look at" mode and transfers corresponding images to an associated processing unit.

Apparatus configured in accordance with the present invention is able to view through the securing laminate to reveal details of the information contained thereunder, and then view the structure of the laminate in such a way as to show the areas on the security laminate which no longer conform to the original manufacturing specification, thus indicating possible forgery, tampering or alteration, and preferably to reveal the presence of other indicators such as may become visible through ultra-violet or infra-red excitation.

In accordance with one aspect of the present invention there is disclosed an arrangement for reading information from a first light transmissive layer and a second layer of an object, said arrangement comprising, in combination:

first light source means for directing (first) light at a first angle of incidence at the object;

second light source means for directing (second) light at a second angle of incidence, different to said first angle of incidence, at the object;

a light receiving device for receiving a reflection of said first light from said first layer, and a reflection of said second light from said second layer and to produce at least one image signal; and

a processing device for processing said image signal to provide information regarding said layers.

Preferably, the first layer comprises a plurality of glass spheres or spheres of material having similar optical properties to glass, referred to herein as microspheres. Alternatively, the first layer comprises a clear material having similar optical properties to polyester.

Preferably, the first light means comprises one or more sources that are directed to said object by first being refracted from a two-way mirror, the light having been reflected by the first layer then returning again through the two-way mirror to the light receiving device. The first light illuminates preferably at multiple different intensities as controlled by the processing device.

Preferably, the processing device is a data processing unit such as a personal computer.

Preferably, the first and second light means are switchable so as to operate alternately or in unison, and of variable intensity. The first and second light means can be of different optical bandwidths. The light source means can also be within the visible spectrum, and/or in the ultra-violet band and/or in the infra-red band. The light produced can be polarized or unpolarized.

Preferably, the light receiving means is a video image receiver such as, for example, a charge coupled device.

Preferably, the first layer is a sheet of plastics material having said spheres of glass or the like applied thereto. Alternatively the first layer can be a sheet of clear or plain polyester or similarly functioning material.

Preferably, said second layer is a document located below the first layer such as for example the page of a passport.

US 6,611,612 B2

3

Preferably, the angle of reflection of one light source relative to the position of the video image receiver is less than 1°. Alternatively, the angle of reflection of one light source relative to the position of the video image receiver is greater than 1°.

There is a second mode of use whereby a sighting is made directly down a beam of light whereupon the details are no longer seen but are replaced by an image of the physical structure of the laminate surface. Alternatively, in this second mode of operation the details are no longer seen but are replaced by the distorted image of the light source being "mirrored" by the surface of the polyester laminate.

In accordance with another aspect of the invention there is provided a frame into which the document or passport is positioned.

In accordance with another aspect of the invention there is provided a multiplicity of light sources wherein some light sources strike the surface of the document and reflect back to the viewing position at an angle greater than 1°.

In accordance with another aspect of the invention there are provided other light sources that strike the document and reflect back to the viewing position at an angle less than 1°.

In accordance with another aspect of the present invention there is provided means by which these light sources are operated from an attached controlling device such as, but not limited to, a personal computer.

The video imaging device or similar sensory array may be located at the view position and directed towards the surface of the document. Images detected by this device are provided with a means whereby said images can be passed onto an attached controlling device such as, but not limited to, a personal computer.

BRIEF DESCRIPTION OF THE DRAWINGS

A preferred embodiment of the present invention will now be described, by way of example, with reference to the accompanying drawings, in which:

FIG. 1 is a schematic cross-section of a typical document over which has been fixed a retroreflective security laminate;

FIG. 2 schematically illustrates the optical properties of the security laminate of FIG. 1;

FIG. 3 schematically illustrates an optics arrangement of the preferred embodiment; and

FIG. 4 illustrates the light paths of the arrangement of FIG. 3.

These figures, which are idealized, are not to scale and are intended to be merely illustrative and non-limiting.

DETAILED DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates a cross-section of the "secured" document 10 having a document substrate 11, with added typing, printing, bar code, photo, or handwriting collectively known herein as a source image 12. The source image 12 is shown in exaggerated size, for the purpose of clarity, and is covered by a composite layer of a security laminate 13. The laminate 13 comprises a retroreflective layer 15 that is made up of a monolayer of microspheres 16, typically formed by glass, an underlying partially-light-transmissive reflective layer 43, typically binder layer 9, and an adhesive layer 14. An example of a suitable laminate 13 is disclosed in Australian Patent No. 462,214 (Sevelin) which corresponds to U.S. Pat. No. 3,801,183. Minnesota Mining and Manufacturing Company's CONFIRM Brand Security Laminates are examples of commercially available laminates suitable for use in the preferred embodiment.

4

FIG. 2 illustrates the optical characteristics of the monolayer 15 of microspheres 16. A light source 17 emits a beam of light 21 that travels towards or is incident upon the laminate 13. In this illustration, the beam of light 21 enters one of the microspheres 16 and is split, with one portion 18 being retroreflected back toward the light source 17 and one portion 19 being transmitted so as to reach the substrate 11 or source image 12, as illustrated. The splitting of light beam 21 is a result of the optical properties of microspheres 16 and underlying reflective layer 43 which includes specular reflectors which are sometimes referred to as being "partially-light-transmissive".

The transmitted light portion 19, passes through the microsphere 16, through the reflective layer 43 and the adhesive layer 14 and strikes the substrate 11, which is opaque, or the source image 12 of the document 10. From there, the light beam is reflected and scattered to produce a number of beams 20.

In can be noted from FIG. 2 that the portion of the light beam 21 that is returned to the source 18 along the light path 18 can be said to be returning from the microsphere 16, at an angle less than 1° and thereby substantially parallel, if the position of the source 17 is also considered to be a viewing position.

It is further noted that whilst FIG. 2 illustrates the optics of a single microsphere 16, all microspheres within the laminate 15 give a corresponding response.

However, if a position 22 is considered to be the viewing position relative to the light source 17, then it can be said that the beams 20 are reflecting at an angle greater than 1° from the surface of the document 10, even though these beams 20, in fact, penetrate the retroreflective layer 15, and reflect from the substrate 11 and source image 12.

Not illustrated in FIGS. 1 or 2, the laminate can alternatively comprise a polyester laminate, known to be used for document security and which comprises a polyester layer, and an adhesive layer corresponding to the adhesive layer 14. The polyester layer has the property that, whilst being transparent to ordinary diffuse light, it is also substantially specularly reflective of light incident at angles substantially normal to the film.

FIG. 3 illustrates an arrangement of one preferred embodiment of a system that comprises two light sources and one viewing position. An alternative configuration of a single light source and two viewing positions can be used. However the "optical" characteristics of both systems are identical.

A view frame 22 is provided that accurately locates the document 10 to be viewed.

A first light source 26 is focused by a lens 27 onto a beam splitting (two way) mirror 23. The turning properties of mirror 23 produce a light source which appears to a viewing position 25 as being returned from the surface of the document 10 at an angle of less than 1°.

A second light source 24 is provided which is arranged to be at an angle relative to a viewing position 25, of greater than 1°. The light source 24 is controlled by power source 28 and trigger source 29 which in turn is controlled by an attached personal computer 41 or equivalent computerized controller. In other embodiments, multiple ones of this first light source 24 can be used.

Arranged at the viewing position 25 is a video image receiver 40 such as, for example, a charge coupled device (CCD).

The light source 26 is controlled by power source 30 and trigger source 31 which in turn is controlled by the personal

US 6,611,612 B2

5

computer 41 controller. In other embodiments multiple ones of light source 26 can be used.

Each of the power sources 28, 30 are configured so as to adjust the intensity of the respective light source 24, 26 through a multiplicity of intensities from a minimum value, such as "just on", to a maximum value, such as "full-on".

A line 32 is the signal path for images recovered by the video image receiver 40 being returned to the personal computer 41 for image processing.

FIG. 4 illustrates the light paths within the preferred embodiment of FIG. 3. The object document 10 is being examined for both content and security integrity.

The light source 24, relative to the viewing position of the video image receiver 40, is at an angle greater than 1° when emitted light path 33 is measured against a return beam 34. When the light source 24 is illuminated, the beam 33 penetrates the microsphere structure of the document 10 and reflects from the substrate 11 and source image 12 beneath.

The video image receiver 40 can therefore "look through" the laminate 13.

When the light source 26 is illuminated, a beam of light 35, is redirected as a beam 36, towards the document 10, due to the properties of beam splitting mirror 23.

The beam 36 is then reflected as a beam 37 by the surface of the microsphere structure of the document 10 being at an angle of less than 1°. In this case the light source 26 does not appear to penetrate the microsphere structure but instead can be said to "look at" the microsphere structure of the laminate.

The characteristics of document 10 can be detected by the video image receiver 40 and passed on for analysis by the personal computer 41 dependent on which of the light sources 24 or 26 is illuminated. In a mode where the source image 12 contained on the document 10 needs to be passed to the computer 41, the computer controlled light source 24 is illuminated.

In a mode where the minute details of the structure of the microspheres of the laminate 13 need to be passed on to the computer 41, then computer controlled light source 24 is extinguished and light source 26 is illuminated.

As an alternative to alternately switching light sources 24 and 26, the beams of light 33 and 35 can be filtered to include light only of a limited or predetermined wavelength or polarity. In such a situation, both light sources 24 and 26 can be enabled simultaneously and appropriate computer software is used to process and resolve a dual image created thereby.

Images processed and produced by the computer 41 can be displayed for examination on a video display unit 42 associated therewith.

Through external processing it is possible to identify that a retro-reflective laminate exists, or that a plain polyester laminate exists, or that neither exist.

It is a pre-condition of the following explanation that in the previous step of recovering visual data from the document and decoding that data into computer compatible codes, it is revealed as to which type of laminate is supposed to be protecting said document. This is achieved through a "reference" or "look-up" table in such an external device as assigning "this style of laminate to this series of protected document", e.g., Australian passports contain a retroreflective laminate, British passports contain a polyester laminate, etc. These pre-conditions and external controls can be programmed into the personal computer 41.

If external control determines that a retroreflective laminate should be present, light sources 24 and 26 are illumi-

6

nated at minimum intensity. If a retroreflective laminate is present a visual response will be detected over the entire viewing area of the video image receiver 40.

If no laminate is present there will be insufficient light intensity to illuminate the source image 12 and the video image receiver will see no visual response.

If a polyester film or similar laminate is present the mirrored image will be in the form of a distorted flairing in the center of the video image area roughly equal to the image of the light source.

When external control determines that a retroreflective laminate exists, light sources 24 and 26 are excited to illuminate to mid brilliance where the microsphere structure reflects a much brighter signal which makes it possible to distinguish the background bead signal from any hidden source image contained in the microsphere structure. Control within the computer 41 then attempts to pattern match this hidden source image against a pattern that has been stored as part of the reference for the item being examined.

In order to examine for microsphere structure damage, the light sources 24 and 26 are illuminated to full brilliance where any damage is identifiable as a dark area against the intact microsphere structure. The computer 41 is configured to apply a brightness threshold across the video image in order to reveal the dark areas.

If external control determines that a polyester laminate should be present, the light source 26 is illuminated to a minimum brilliance. A distorted image of the light source will be seen by the video image receiver as a distorted bright flair in roughly the center of the image area. This pattern is stored. The light source 26 is then increased in intensity progressively. If the image of the flairing is seen to grow in area in the correct proportion to the original image then the light source is "looking at itself in the mirror" and confirmation is given that polyester laminate exists.

To examine for surface cuts, a further light source 50 is aimed at the surface of the document 10, 89° away from the axis of the light source 26. This is achieved by creating a beam of light 51 that is focused across the surface of the document 10, in either the horizontal or vertical plane depending on the orientation of the document 10. The focused light 51 is reflected from the document 10 back through the mirror 23 and is detected by the image receiver 40. Cuts will show up as flairs in the surface of the laminate that were not detected under light source 24.

If external control indicates that no laminate is or should be present, the light source 26 is illuminated to full brilliance and the image gathered is compared to the image seen by the light source 24. If they are identical then there is no laminate present.

To check for the presence of ultra-violet or infra-red responses, as determined by the "reference" or "look-up" tables, under external control a corresponding light source is illuminated and the video image receiver 40 should detect a specific color response at a specific x/y coordinate, which is resolvable by the computer 41.

The presence of patterned diffraction gratings, sometimes referred to as "kinegrams", and of holographic embossings, can also be revealed through the activation of the aforementioned light sources. In these cases the gratings reveal their position and shape as being a difference in the color responses as revealed by two differently angled light sources. Computer analysis can compare the responses to provide a determination of the presence or otherwise of holographs or embossings.

The foregoing describes only a number of embodiments of the present invention and modifications, obvious to those

US 6,611,612 B2

7 8

skilled in the art, can be made thereto without departing from the scope of the present invention.

What is claimed is:

**1**. A device for use with a document having an at least partially light-transmissive first layer and a second layer located below the first layer, the second layer including at least one source image, the device comprising:

  (a) a computer;

  (b) at least one light source, the at least one light source adapted to illuminate the document with visible light, ultraviolet light, and infrared light, the at least one light source being controlled by the computer;

  (c) a video image receiver for receiving at least one image of at least a portion of the document, wherein the at least one image is transferred to the computer; and

  (d) a signal path for returning images recovered by the video image receiver to the computer;

  wherein the computer further comprises software for examining both content and security integrity of the document.

**2**. The device of claim **1**, wherein the computer is associated with a video display unit on which images processed by the computer can be displayed for examination by a person.

**3**. The device of claim **1**, wherein the at least one image is the source image.

**4**. The device of claim **3**, wherein the source image is handwriting.

**5**. The device of claim **3**, wherein the source image is typing.

**6**. The device of claim **3**, wherein the source image is a bar code.

**7**. The device of claim **3**, wherein the source image is a photo.

**8**. The device of claim **3**, wherein the source image is printing.

**9**. The device of claim **1**, wherein a power source is configured to adjust the intensity of the at least one light source.

**10**. The device of claim **1**, wherein the computer controls a power source and a trigger source.

**11**. The device of claim **1**, wherein the light source also emits polarized light.

**12**. The device of claim **1**, wherein the light source also emits light of a predetermined wavelength.

**13**. The device of claim **1**, wherein the computer includes reference software, wherein the reference software comprises a reference or look-up table that associates a certain document characteristic with documents originating in a predetermined country.

**14**. The device of claim **13**, wherein the reference or look-up table provides operation information whereby the computer controls the at least one light source.

**15**. The device of claim **13**, wherein the reference or look-up table provides information that enables the computer to examine the document for both content and security integrity.

**16**. The device of claim **1**, wherein the device examines the document for surface cuts.

**17**. The device of claim **1**, wherein the device detects a specific color response at a specific x/y coordinate on the document under infrared light.

**18**. The device of claim **1**, wherein the device detects a specific color response at a specific x/y coordinate of the document under ultraviolet light.

**19**. The device of claim **1**, wherein the device detects the presence of patterned diffraction gratings by detecting differences in color responses.

**20**. The device of claim **1**, wherein the device detects the presence of patterned diffraction gratings by detecting differences in color responses.

**21**. The device of claim **1**, wherein the device detects the presence of hologram by detecting differences in color responses.

**22**. The device of claim **1**, wherein the device detects retroreflected light.

**23**. The device of claim **1**, wherein the computer controls (1) an on/off status of the at least one light source, and (2) light intensity of the at least one light source.

**24**. The device of claim **1**, wherein the computer provides

  (1) a comparative analysis between a first light intensity provided to the document and a second light intensity of the image received through the video image receiver to determine if the document has been tampered with;

  (2) a brightness threshold analysis to detect defects in a microsphere layer when present;

  (3) a flair detection analysis to detect surface defects in the document; and

  (4) a comparative analysis comparing features of the document image with a reference or look-up table programmed into the computer, wherein the reference or look-up table associates certain document characteristic with documents originating in a predetermined country.

**25**. A device for use with a document having an at least partially light-transmissive first layer and a second layer located below the first layer, the second layer including at least one source image, the device comprising:

  (a) a computer;

  (b) at least one light source, the at least one light source adapted to illuminate the document, with visible light and at least one of ultraviolet light and infrared light, the at least one light source being controlled by the computer;

  (c) a video image receiver for receiving at least one image of at least a portion of the document wherein the at least one image is transferred to the computer;

  (d) a signal path for returning images recovered by the video image receiver to the compute; and

  (e) a video display unit on which images processed by the computer can be displayed for examination by a person.

**26**. The device of claim **25**, wherein the computer further comprises software for examining both content and security integrity of the document.

**27**. The device of claim **25**, wherein the computer provides

  (1) a comparative analysis between a first light intensity provided to the document and a second light intensity of the image received through the video image receiver to determine if the document has been tampered with;

  (2) a brightness threshold analysis to detect defects in a microsphere layer when present;

  (3) a flair detection analysis to detect surface defects in the document; and

  (4) a comparative analysis comparing features of the document image with a reference or look-up table programmed into the computer, wherein the reference or look-up table associates certain document characteristic with documents originating in a predetermined country.

**28**. A device for use with a document having an at least partially light-transmissive first layer and a second layer

US 6,611,612 B2

**9**

located below the first layer, the second layer including at least one source image, the device comprising:

  (a) a computer;

  (b) at least one light source, the at least one light source adapted to illuminate the document with visible light and at least one of ultraviolet light and infrared light, the at least one light source being controlled by the computer;

  (c) a video image receiver for receiving at least one image of at least a portion of the document, wherein the at least one image is transferred to the computer; and

  (d) a signal path for returning images recovered by the video image receiver to the computer; and

  (e) a reference or look-up table programmed into the computer that associates a certain document characteristic with documents originating in a predetermined country.

**29**. The device of claim **28**, wherein the computer provides

  (1) a comparative analysis between a first light intensity provided to the document and a second light intensity of the image received through the video image receiver to determine if the document has been tampered with;

  (2) a brightness threshold analysis to detect defects in a microsphere layer when present;

  (3) a flair detection analysis to detect surface defects in the document; and

  (4) a comparative analysis comparing features of the document image with a reference or look up table programmed into the computer, wherein the reference or look-up table associates a certain document characteristic with documents originating in a predetermined country.

**30**. A device for use with a document having an at least partially light-transmissive first layer and a second layer located below the first layer, the second layer including at least one source image, the device comprising:

**10**

  (a) a computer;

  (b) at least one light source, the at least one light source adapted to illuminate the document with visible light and at least one of ultraviolet light and infrared light, the at least one light source being controlled by the computer;

  (c) a video image receiver for receiving at least one image of at least a portion of the document, wherein the at least one image is transferred to the computer; and

  (d) a signal path or returning images recovered by the video image receiver to the computer;
    wherein the computer further comprises software for examining the document for surface cuts.

**31**. The device of claim **30**, wherein the computer detects flairs on an outer surface of the document, wherein the flairs result from a light reflected off of the outer surface from a light source focused along the outer surface.

**32**. A device for use with a document having an at least partially light-transmissive first layer and a second layer located below the first layer, the second layer including at least one source image, the device comprising:

  (a) a computer;

  (b) at least one light source, wherein the at least one light source is adapted to illuminate the document with visible light and at least one of ultraviolet light and infrared light, wherein the at leas one light source is controlled by the computer;

  (c) a video image receiver for receiving at least one image of at least a portion of the document, wherein the at least one image is transferred to the computer; and

  (d) a signal path or returning images recovered by the video image receiver to the computer.

**33**. The device of claim **32**, wherein the computer further comprises software for examining both content and security integrity of the document.

\*  \*  \*  \*  \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,611,612 B2                                    Page 1 of  1
DATED         : August 26, 2003
INVENTOR(S)   : Graeme R. Mann

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Title page,
Item [62], **Related U.S. Application Data**, after "now Pat. No. 6,019,287" insert the
following:
-- , which is a national stage application filed under 35 U.S.C. § 371 of PCT No. PCT/
US94/11359, filed October 6, 1994, which claims the benefit of Australian Patent No.
PM1661, filed October 6, 1993. --.

Column 1,
Line 8, after "287" insert -- , which is a national stage application filed under 35 U.S.C.
§ 371 of PCT No. PCT/US94/11359, filed October 6, 1994, which claims the benefit of
Australian Patent No. PM1661, filed October 6, 1993. --.

Signed and Sealed this

Eleventh Day of April, 2006

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO.    : 6,611,612 B2                                    Page 1 of 1
DATED          : August 26, 2003
INVENTOR(S)  : Graeme R. Mann

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Title page,
Item [62], **Related U.S. Application Data**, after "now Pat. No. 6,019,287" insert the following:
-- , which is a national stage application filed under 35 U.S.C. § 371 of PCT No. PCT/US94/11359, filed October 6, 1994, which claims the benefit of Australian Patent No. PM1661, filed October 6, 1993. --.

Column 1,
Line 8, after "287" insert -- , which is a national stage application filed under 35 U.S.C. § 371 of PCT No. PCT/US94/11359, filed October 6, 1994, which claims the benefit of Australian Patent No. PM1661, filed October 6, 1993. --.

Signed and Sealed this

Eleventh Day of April, 2006

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
3M INNOVATIVE PROPERTIES COMPANY, THE 3M COMPANY

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
ASSURETEC SYSTEMS, INC
County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(c) Attorneys (Firm Name, Address, and Telephone Number)
Thomas L. Halkowski
Fish & Richardson P.C. (Delaware)
Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware 19899-1114
(302) 652-5070

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1. U.S. Government Plaintiff
- [ ] 2. U.S. Government Defendant
- [X] 3. Federal Question (U.S. Government Not a Party)
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

**PERSONAL INJURY**
- [ ] 362 Personal Injury - - - Med. Malpractice
- [ ] 365 Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [X] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS – Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 810 Selective Service
- [ ] 850 Securities / Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 440 Other Civil Rights

### PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Patent Infringement under 35 U.S.C. §§ 271 and 281 through 285

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

Demand: $

CHECK YES only if demanded in Complaint
JURY DEMAND   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY
(See Instructions)

JUDGE s

DOCKET NUMBER

DATE   6/6/06

SIGNATURE OF ATTORNEY OF RECORD
Thomas L. Halkowski

TYPE NAME OF ATTORNEY
Thomas L. Halkowski

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 06 - 375 _____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____1_____ COPIES OF AO FORM 85.

JUN 0 6 2006
(Date forms issued)

_Joseph Q. Saienni III_
(Signature of Party or their Representative)

_Joseph J. Saienni III_
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action